# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**ELIZABETH EVANS,**

    **Plaintiff,**

    vs.                                                                                                             Civ. No. 20-53  JFR

**ANDREW SAUL, Commissioner**
**of SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 13) filed April 6, 2020, in support of Plaintiff Elizabeth Evans' ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits and Title XVI supplemental security income.  On June 16, 2020, Plaintiff filed her Motion to Reverse and Remand for a Rehearing With Supporting Memorandum.  Doc. 21.  The Commissioner filed a Response in opposition on September 17, 2020 (Doc. 25), and Plaintiff filed a Reply on October 20, 2020 (Doc. 30).  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  Docs. 4, 8, 9.

## I. Background and Procedural History

Plaintiff Elizabeth Evans ("Ms. Evans") alleges that she became disabled on September 1, 2016, at the age of fifty, because of posttraumatic stress disorder and panic disorder. Tr. 347, 363. Ms. Evans completed two years of college in 2009 and has worked as a customer service representative at a grocery store, as a cashier, a waitress, and a housekeeper. Tr. 348, 355-62, 374-80. She reported she stopped working on October 15, 2016, after both she and her employer determined she "should not work there anymore." Tr. 347.

On January 24, 2017, Ms. Evans filed applications for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. Tr. 284-87, 288-94. On August 16, 2017, Ms. Evans' applications were denied. Tr. 91, 92, 93-106, 107-20, 158-62. They were denied again at reconsideration on January 11, 2018. Tr. 121, 123-37, 139-53, 155, 166-72, 173-79. Upon Ms. Evans' request, Administrative Law Judge (ALJ) Ann Farris held a hearing on November 29, 2018. Tr. 51-90. Ms. Evans appeared in person at the hearing with attorney representative Laura Johnson. *Id*. On May 22, 2019, ALJ Farris issued an unfavorable decision. Tr. 30-43.

Within less than two months of the ALJ's decision, Ms. Evans obtained a consultative psychological evaluation and assessment of her ability to do work-related mental activities from Steven K. Baum, Ph.D., dated July 10, 2019, through August 11, 2019. Doc. 15-20. Dr. Baum opined that Ms. Evans' ability to do work-related mental activities were more severe than those described in the ALJ's RFC assessment, so severe that if accepted, Ms. Evans would be disabled. *Id.* Ms. Evans provided these materials to the Appeals Council on August 12, 2019, and argued that good cause existed for doing so. Tr. 453. The Appeals Counsel declined to consider the evidence, explaining that

>You submitted records from Steven Baum, Ph.D., dated September 1, 2016, through July 12, 2019 (6 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
>
>You submitted records from Steven Baum Ph.D., dated July 10, 2019 through August 11, 2019 (15 pages). The Administrative Law Judge decided your case through May 22, 2019. This additional evidence does not affect the decision about whether you were disabled beginning on or before May 22, 2019.

Tr. 2. The Appeals Council did not exhibit any of the new evidence and on November 20, 2019, the Appeals Council issued its decision denying Ms. Evans' request for review and upholding the ALJ's final decision. Tr. 1-6. On January 17, 2020, Ms. Evans timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

>(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[2] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

---

[2] Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(b), 416.972(b).

    (2)       At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

    (3)       At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

    (4)       If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

    (5)       If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5.  The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.*  A finding that the

claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

### B. Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But

where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

### III.  Analysis

The ALJ made her decision that Ms. Evans was not disabled at step four of the sequential evaluation.  Tr. 41-42.  Specifically, the ALJ found that Ms. Evans met the insured status requirements through June 30, 2021.  Tr. 35.  The ALJ found that Ms. Evans had engaged in substantial gainful activity since her alleged onset date of September 1, 2016, but that the work activity constituted an unsuccessful work attempt.  *Id.*  The ALJ determined that Ms. Evans had severe impairments of post-traumatic stress disorder, panic disorder, and depression.  Tr. 36.  The ALJ determined that Ms. Evans did not have an impairment or combination of impairments that met or medically equaled the severity of a listing.  Tr. 36-37.  Proceeding to step four, the ALJ, after careful consideration of the record, found that Ms. Evans had the residual functional capacity to

> perform a full range of work at all exertional levels but with the following nonexertional limitations:  the claimant is able to perform simple routine tasks.  She cannot have interaction with the general public.  She can tolerate occasional superficial interaction with co-workers  She cannot perform work requiring a production rate pace or tandem tasks.

Tr. 37-41.  The ALJ further concluded at step four that Ms. Evans was capable of performing her past relevant work as a dishwasher and stable hand.  Tr. 41.  The ALJ made alternative findings at step five and determined that there were other jobs existing in the national economy that

Ms. Evans also is able to perform. Tr. 42-43. The ALJ, therefore, determined that Ms. Evans was not disabled. Tr. 43.

In her Motion, Ms. Evans argues that (1) the Appeals Council erred in failing to consider the medical evidence from Dr. Baum that Ms. Evans submitted on August 12, 2019; (2) the ALJ erred in failing to properly weigh the opinion of Susan Reyes Torres, LMSW, contrary to Social Security Rule 06-03p; and (3) the ALJ erred in failing to consider the non-medical source statements of Ms. Evans' former managers, Jason Giglio and W. L. Mooring. Doc. 21 at 4-27.

For the reasons discussed below, the Court finds that the Appeals Council erred in failing to consider the medical evidence from Steven K. Baum, Ph.D. As such, this case requires remand.

A.     **Consideration of Additional Evidence**

On July 10, 2019, less than two months after the ALJ's unfavorable decision, Steven K. Baum, Ph.D., performed a psychological evaluation of Ms. Evans based on a referral from her then Attorney Michael Armstrong. Tr. 15-20. Dr. Baum spent eleven hours in clinical interview, third-party interview, medical record review, report writing, psychological testing, and follow-up phone calls.[3] *Id.* On exam, Dr. Baum noted, *inter alia*, that Ms. Evans was alert, oriented times three and behaviorally appropriate. Tr. 15. He also noted that Ms. Evans' speech

---

[3] Dr. Baum's record review included mental health records and evaluations from Canyon Light; Presbyterian Medical Services; Alamogordo Behavioral Health; Psychological Evaluation by Examining State Agency Psychological Consultant Kenneth C. Kenney, Ph.D., MSW; Sierra Vista Hospital; Medical Assessment by Susan V. Reyes Torres, LMSW; Medical Assessment by Sherri Musgrave, CNP; Medical Assessment by Elizabeth Tudor, LCSW; Adult Function Report; Third-Party Function Report by Robert Langston; and Sworn Statement by Jason Giglio. Tr. 16. Psychological testing included the Minnesota Multiphasic Personality Inventory, the St. Louis University Mental Status Exam, and the PCL-5 PTSD Checklist. *Id.*

was pressured and devoid of halting, and that her mood was anxious and her affect labile "so much so that [he] had to ask her to calm down several times." *Id.* Dr. Baum indicated that Ms. Evans' thought process was quick with content laden as schizotypal (spiritual-paranormal experiences e.g. déjà vu). *Id.* Dr. Baum noted that Ms. Evans' fund of knowledge was fair-good, and that her impulsivity and judgment were fair and concretized. *Id.* Dr. Baum indicated that Ms. Evans was very motivated, but reported not having the coping skills she used to and being easily overwhelmed by criticism. *Id.* Dr. Baum noted Ms. Evans reported being isolative, socially awkward, and misinterpreting social cues. *Id.* Dr. Baum stated that Ms. Evans "borders on higher functioning autistic states emotionally connecting to dogs, horses and non-human beings." *Id.*

Based on all of the foregoing, Dr. Baum diagnosed Ms. Evans with (1) neurocognitive disorder – mild; (2) general anxiety with panic; (3) depression; (4) PTSD; and (5) schizoid/schizotypal/Aspergers. Doc. 16. Dr. Baum indicated Ms. Evans' prognosis was poor. *Id.*

In conjunction with his psychological evaluation, Dr. Baum also completed a *Medical Assessment of Ability to Do Work-Related Activities (Mental)* on Ms. Evans' behalf. Tr. 8-9. The instructions directed Dr. Baum to consider Ms. Evans' medical history and the chronicity of findings from before September 1, 2016, to current examination. Tr. 8. In doing so, Dr. Baum assessed that Ms. Evans was *slightly limited* in her ability to (1) ask simple questions or request assistance; (2) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (3) be aware of normal hazards and take adequate precautions in the workplace. Tr. 8-9. Dr. Baum assessed that Ms. Evans was *moderately limited* in her ability to (1) understand and remember very short and simple instructions; (2) carry out very short and simple instructions; (3) perform activities within a schedule, maintain regular attendance and be

punctual within customary tolerance; (4) sustain an ordinary routine without special supervision; (5) work in coordination with/or proximity to others without being distracted by them; (6) make simple-work-related decisions; (7) interact appropriately with the general public; and (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  *Id.*  Dr. Baum assessed that Ms. Evans had *moderate to marked limitations* in her ability to (1) remember locations and work-like procedures; (2) respond appropriately to changes in the workplace.  *Id.*  Dr. Baum assessed that Ms. Evans had *marked limitations* in her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods of time (i.e. 2-hours segments); (4) complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; (5) accept instructions and respond appropriately to criticism from supervisors; (6) travel in unfamiliar places or use public transportation; and (6) set realistic goals or make plans independently of others.  *Id.*

Lastly, Dr. Baum completed forms for Listings 12.04 – *Depressive, Bipolar and Related Disorders*; 12.06 – *Anxiety and Obsessive-Compulsive Disorders*; and 12.15 – *Trauma and Stressor-Related Disorders*.  Tr. 10-13.  Dr. Baum assessed that Ms. Evans met certain diagnostic criteria for each listing that resulted in marked functional limitations.  *Id.*

    **B.**    **The Appeals Council Erred in Failing to Consider the Evidence From Dr. Baum**

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review.  *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)).  "[O]ur general rule of *de novo* review permits us to resolve the matter and remand if the Appeals Council erroneously rejected the

9

evidence." *Krauser*, 638 F.3d at 1328 (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)).

Additional evidence should be considered only if it is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Evidence is new "if it is not duplicative or cumulative" and material "if there is a reasonable possibility that it would have changed the outcome." *Threet,* 353 F.3d at 1191. Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ; *i.e.,* the period on or before the date of the ALJ's decision. *Chambers*, 389 F.3d at 1142.

> If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision. If the evidence does qualify and the Appeals Council considered it "in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings.

*Chambers*, 389 F.3d at 1142 (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).

Additionally, the regulations provide that if a claimant "submit[s] additional evidence that does not relate to the period on or before the date of the [ALJ] hearing decision . . . or the Appeals Council does not find [claimant] had good cause for missing the deadline to submit the evidence, the Appeals Council will notify claimant with an explanation of why it did not accept the additional evidence and advise claimant of the right to file a new application. 20 C.F.R. §§ 404.970(c), 416.1470(c). Here, the Appeals Council explained that it did not consider the additional evidence Ms. Evans submitted because there was not a reasonable probability that it would change the outcome of the decision and because the additional evidence did not relate to the period at issue. Tr. 2.

Ms. Evans argues that the Appeals Council erred in failing to consider Dr. Baum's psychological report and assessed limitations. Doc. 21 at 4-9. Ms. Evans first asserts that although the Appeals Council did not rule on or exclude the report on the basis of good cause and therefore implicitly found good cause, that good cause nonetheless exists for not providing Dr. Baum's report to the ALJ prior to the hearing; *i.e.,* it did not exist. *Id.* at 4-6. Ms. Evans further asserts that she argued good cause when she submitted the additional evidence to the Appeals Council in compliance with the relevant regulations. *Id.* Ms. Evans next asserts that Dr. Baum's psychological report and assessed limitations should have been considered because they are new, material, and relate to the relevant period of time. *Id.* at 7-9. Ms. Evans argues that the evidence is new because it did not exist at the time ALJ Farris issued her decision, and that the evidence is not duplicative because Dr. Baum's assessment included psychometric testing and a thorough review of the medical evidence record. *Id.* Ms. Evans argues that this evidence is material because it has a reasonable probability of changing ALJ Farris's outcome since Dr. Baum's assessment is more restrictive than the RFC. *Id.* Lastly, Ms. Evans argues the evidence is chronologically pertinent because Dr. Baum performed a history related to the relevant time period, reviewed records from the relevant time period, and completed forms that specifically asked him to consider Ms. Evan's medical history and chronicity of findings as from "before September 1, 2016, to the current examination." Doc. 30 at 6.

The Commissioner contends that Ms. Evans cannot show that the additional medical evidence relates to the relevant time period adjudicated in the ALJ's decision or that it was likely to change the outcome of the ALJ's decision. Doc. 25 at 12-13. As such, the Commissioner asks this Court to reject Ms. Evans' attempt to use a one-time consultative examination obtained months after the ALJ's decision as a means to overturn the ALJ's decision that is supported by

substantial evidence. *Id.* The Commissioner further argues that Ms. Evans has failed to sustain her burden of demonstrating good cause and asserts the Court must determine whether good cause exists for Ms. Evans' submission of additional evidence as part of its *de novo* review. *Id.* at 14-15.

### 1.     The Additional Evidence Is New

Additional evidence is "new" if it is "not duplicative or cumulative." *See Threet*, 353 F.3d at 1191. The additional evidence here is not duplicative. It is undisputed that Dr. Baum's independent psychological evaluation and functional assessment of Ms. Evans' ability to do work-related mental activities were not available to the ALJ at the time she made her decision. Additionally, Dr. Baum's opinion is more restrictive than the other acceptable medical source[4] opinion evidence in the record.[5] As such, the evidence is not cumulative.

### 2.     The Additional Evidence Is Chronologically Pertinent

The additional evidence relates to the period at issue. The Commissioner argues that Dr. Baum did not have first-hand knowledge of Ms. Evans' mental impairments as they existed prior to the ALJ's decision and that Dr. Baum did not suggest that he was assessing the nature and severity of Ms. Evans' mental impairments for the relevant time period. Doc. 25 at 15.

---

[4] For claims filed before March 27, 2017, "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298.

[5] The medical evidence record contains a psychological evaluation prepared by examining State Agency psychological consultant Kenneth C. Kenney, Ph.D., on July 26, 2017. Tr. 561-67. Dr. Kenney, however, did not provide an assessment of Ms. Evans' ability to do work-related mental activities in vocational terms. *Id.* On August 16, 2017, nonexamining State Agency psychological consultant Scott R. Walker, M.D., prepared a Mental Residual Functional Capacity Assessment at the initial level of consideration of Ms. Evans' application and assessed that Ms. Evans was capable of unskilled work despite finding she had several moderate limitations in each of the four areas of mental functioning. Tr. 102-04, 116-18. Similarly at reconsideration, nonexamining State Agency psychological consultant James Sturgis assessed on January 6, 2018, that Ms. Evans was capable of unskilled work despite a number of moderate limitations in her ability to do work-related mental activities. Tr. 134-36, 150-52. There are three other functional assessments in the medical evidence record prepared by nonacceptable medical providers; *i.e.,* Susan Reyes Torres, LMSW (Tr. 728-29); Elizabeth Tudor, LCSW (Tr. 767-68); and Sherri Musgrave, NP (Tr. 784).

While it is correct that Dr. Baum completed the independent psychological evaluation and functional assessments on July 10, 2019, and August 11, 2019, *after* the ALJ's determination, it is equally true that the instructions directed Dr. Baum to consider Ms. Evans' "medical history and the chronicity of findings as from before September 1, 2016, to current examination."  Tr. 8-13.  *Id.; see* HALLEX I-3-3-6(B) (noting that there are circumstances when evidence dated after the ALJ decision relates to the period at issue, such as when a statement makes a direct reference to the time period adjudicated).  Therefore, on its face, the additional evidence relates to the period at issue.  Additionally, Dr. Baum's materials were generated within two months of the ALJ's decision and address the mental impairments that were clearly before the ALJ and accepted by her; *i.e.,* post-traumatic stress disorder, panic disorder, and depression.  Tr. 16, 36.  The Court, therefore, finds the evidence from Dr. Baum to be chronologically pertinent.

### 3.     **The Additional Evidence Is Material**

The evidence from Dr. Baum is material.  The Commissioner argues that the additional information is not material because Dr. Baum's opinions are conclusory and without support, and because he completed a "check-the-box" form similar to those used by Ms. Evans' other medical sources[6] that the ALJ found unsupported.  Doc. 25 at 16-17.  The Court is not persuaded.  Dr. Baum is a psychologist and, thus, specializes in mental health.  Dr. Baum's report is substantiated by his clinical examination, his review of Ms. Evans' medical records from the relevant period of time, his administration of psychological tests, his diagnoses, and his third-party inquiries. Tr. 15-21.  Further, Dr. Baum is an examining physician.  Here, the ALJ

---

[6] For claims filed before March 27, 2017, other medical sources are defined as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists.  SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

relied only on, at least in part, the *nonexamining* State agency psychological consultants.[7] All things being equal, the opinion of a physician who has examined a claimant, even if only once, is placed above the opinion of a physician who has never seen the claimant at all and only reviewed the medical record. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *see also Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (finding that a limited treatment history by itself is an invalid basis for rejecting a medical source opinion). Additionally, the opinion of an examining psychological consultant could lend support to the other medical source opinions that the ALJ discounted,[8] as well as lend support to certain sworn statements in the record in which Ms. Evans' former work managers described having to terminate Ms. Evans' employment due to her emotional instability, her difficulty being around others, and her difficulty with understanding instructions.[9] Tr. 446, 452. All told, the Court finds Dr. Baum's report and functional assessment qualify as material because they have a reasonable probability of changing the outcome of the case.

---

[7] The ALJ accorded only "some" weight to the nonexamining State agency psychological consultant opinions. Tr. 39. By way of explanation, the ALJ stated that "[t]he State medical consultants' determination is broadly consistent with the evidence available at the time and supported by their review of the record. However, the evidence suggest[s] that the claimant would have moderate limitations in adapting and managing oneself. Her treatment notes show that there were times where she appeared anxious, tearful, depressed, and disheveled. She also underwent outpatient rehabilitation and a brief inpatient hospitalization. For this reason, I give some weight to the State's determination." Tr. 39.

[8] The medical evidence record contains three other medical source statements assessing Ms. Evans' ability to do work-related mental activities, all of which indicated that Ms. Evans had certain *marked* limitations in her ability to do work-related mental activities. Tr. 728-29, 767-68, 784. The ALJ accorded little weight to these assessments. Tr. 40. Ms. Evans argues that the ALJ improperly erred in weighing the opinion of Susan Reyes Torres, LMSW. Doc. 21 at 9-20. The Court, however, does not reach this argument given its decision that the Appeals Council improperly rejected qualifying new evidence.

[9] The record contains sworn statements from Jason Giglio and W. L. Mooring, two of Ms. Evans' former managers. Tr. 446, 452. The ALJ accorded little weight to their statements explaining that their accounts of Ms. Evans' workplace conduct were not consistent, *inter alia,* with Ms. Evans' treatment notes and reported activities. Tr. 40.

      **4.**    <u>**Good Cause**</u>

The Commissioner argues that Plaintiff cannot sustain her burden of demonstrating that she had good cause for not submitting the additional medical evidence prior to the administrative hearing. Doc. 25 at 13. The Commissioner further argues that the Appeals Council's silence on the issue of good cause in its explanation for rejecting the additional evidence requires the Court to consider the issue of good cause as part of its *de novo* review.[10]

It is undisputed that the regulations allow for additional evidence to be submitted to the Appeals Council. *See* 20 C.F.R. §§ 404.970 and 416.1470. To be sure, in the ALJ's Notice of Decision, she informed Ms. Evans that if she disagreed with the ALJ's unfavorable decision, she may file an appeal with the Appeals Council, and in doing so could send the Appeals Council a written statement about her case and/or "send [] new evidence." Tr. 30-31. Although the ALJ's Notice of Decision broadly directed Ms. Evans to the rules the Appeals Council uses in its review, it did not specifically articulate the rule that requires a showing of good cause when submitting additional evidence. Tr. 31. That said, the regulations indeed set forth certain guidelines for establishing good cause when submitting additional evidence to the Appeals Council.[11] And in compliance with those regulations, Ms. Evans expressly asserted her grounds

---

[10] The Commissioner cites *Hite v. Saul*, USDC NM Civ. No. 19-116 GJF, 2020 WL 1158569, at *4-5 (D.N.M. Mar. 10, 2020) (unpublished) to support its position that where the Appeals Council is silent on the issue of good cause, that the Court should consider whether a claimant had good cause for failing to submit evidence prior to the administrative hearing as part of its *de novo* review. Doc. 25 at 13. In that case, claimant submitted additional evidence to the Appeals Council and conceded that he failed to provide any explanation for a delay at the time of the submission. *Hite*, 2020 WL 1158569, at *4-5. The court determined, *inter alia*, that it could not on the one hand ignore claimant's concession while on the other hand conclude that the Appeals Council implicitly found good cause. *Id.* That is not the case here where Ms. Evans' counsel specifically asserted good cause pursuant to 20 C.F.R. 404.970(a)(5)(b)(3) at the time she submitted the additional evidence to the Appeals Council. Tr. 453.

[11] (b)    The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 404.935 because:
      (1)    Our action misled you;
      (2)    You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

15

for good cause pursuant to 20 C.F.R. § 404.970(a)(5)(b)(3) when she submitted the additional evidence to the Appeals Council on August 12, 2019.  Tr. 453.

Subsequently, on November 20, 2019, the Appeals Council notified Ms. Evans that it had denied her request for review.  Tr 1-6.  In doing so, it articulated the rules it had applied in reviewing her case, one of which included the good cause requirement.  Tr. 1-2.  Then, having stated the rules it applied in reviewing Ms. Evans' case, the Appeals Council explained its reasons for finding the additional evidence did not qualify for consideration; *i.e.,* because there was not a reasonable probability that it would change the outcome of the decision and because the additional evidence did not relate to the period at issue.  Tr. 2.  Thus, given the Appeals Council's explicit consideration of the good cause rule in its review as stated in its notice, and given it made no mention of good cause in its explanation for rejecting the additional evidence Ms. Evans submitted, the Court finds no reason to disqualify the additional evidence based on a supposed failure to establish good cause.  *See Emmons v. Saul*, USDC NM Civ. No. 19-102 KBM, 2020 WL 376708, at *5 (D.N.M. Jan. 23, 2020) (unpublished) (denying the Commissioner's post-hoc good cause argument where it was not the reason actually offered by the Appeals Council for denial of review).[12]

---

(3)   Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.  Examples include, *but are not limited to*:
    (i)   You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
    (ii)   There was a death or serious illness in your immediate family;
    (iii)   Important records were destroyed or damaged by fire or other accidental cause;
    (iv)   You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or
    (v)   You received a hearing level decision on the record and the Appeals Council reviewed your decision.

20 C.F.R. 404.970(b), 416.1470(b) (emphasis added).

[12] Magistrate Judge Karen B. Molzen also stated, as noted by the claimant, that claimant could not have submitted the additional evidence prior to the ALJ's decision because it did not yet exist, and that claimant was prompted by the

For all of the foregoing reasons, the Court finds that the psychological report and functional assessment prepared by Dr. Baum on Ms. Evans' behalf are new, chronologically pertinent, and material because there is a reasonable probability that they would change the outcome of this case. Because the Appeals Council improperly declined to consider the qualifying evidence, the Court must remand the case to allow the Appeals Council the first opportunity to evaluate the ALJ's decision in light of the complete record. *See Chambers*, 389 F.3d at 1143; *Threet*, 353 F.3d at 1191.

### C. Remaining Issues

The Court will not address Ms. Evans' remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV. Conclusion

For the reasons stated above, the Court finds Ms. Evans' Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 21) is well taken and is **GRANTED.**

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**

---

ALJ's unfavorable disability decision to acquire and provide additional evidence concerning her impairments. *Emmons v. Saul*, 2020 WL 376708, at *5.